IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JOSE R. GUERRERO-SANCHEZ,

          Petitioner,         :      Case No. 3:19-cv-037

    - vs -                      District Judge Walter H. Rice
                               Magistrate Judge Michael R. Merz

CHARLES BRADLEY, Warden,
  Pickaway Correctional Institution

                                :

          Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus action is before the Court for decision upon the Petition (ECF No. 3), the State Court Record (ECF No. 24), the Return of Writ (ECF No. 26), and Petitioner's Reply (ECF No. 27). Although Petitioner filed this case *pro se*, the Court granted his motion for appointment of counsel and he has been represented by Assistant Federal Public Defender Kevin Schad (ECF No. 4, 6). After counsel was appointed, Guerrero-Sanchez was allowed to file a Supplement (ECF No. 20) which does not add grounds for relief, but briefs the procedural posture of the case.

**Litigation History**

Petitioner was indicted on March 11, 2016, by a Montgomery County grand jury on two counts of possession of drugs, fentanyl (fifty times bulk) and methamphetamine. He filed motions to suppress his statements to police and the drug evidence seized from his hotel room. After those

1

motions were overruled, he pleaded no contest, receiving an eleven-year prison term on the fentanyl count and a concurrent one-year term on the methamphetamine count.

On direct appeal, Guerrero-Sanchez asserted error in the failure to suppress and in imposing the maximum sentence on the fentanyl conviction. The Second District Court of Appeals overruled the assignments of error and affirmed the conviction. *State v. Guerrero-Sanchez,* 107-Ohio-8185 (Ohio App. 2nd Dist. Oct. 13, 2017), appellate jurisdiction declined, 152 Ohio St. 3d 1425 (2018).

On February 15, 2018, Guerrero-Sanchez, filed a Delayed Application to Reopen the appeal which the Second District rejected (ECF No. 24, Ex. 22). Petitioner took no appeal to the Supreme Court of Ohio. On June 4, 2018, he filed a petition for post-conviction relief which the trial court found was untimely and barred by *res judicata.* Later, he filed a duplicative post-conviction petition which the trial court rejected because it lacked jurisdiction over a second petition. Guerrero-Sanchez did not appeal either of those decisions. On January 23, 2019, he filed his habeas corpus petition in this Court by depositing it with prison staff for mailing.

The Petition pleads the following grounds for relief:

> **Ground One**: The trial court erred when it overruled Guerrero-Sanchez's motion to suppress.
>
> **Issue #1:** Whether the trial court erred by overruling Guerrero-Sanchez's motion to suppress his statements which were not made voluntarily.
>
> . . . Mr. Guerrero-Sanchez did testify that he understood just a little bit of English. More importantly the police and/or detectives had already entered into Mr. Guerrero-Sanchez's hotel room, handcuffed Mr. Guerrero-Sanchez and searched the hotel room before a Spanish speaking officer arrived and gave/read Mr. Guerrero-Sanchez his *Miranda* rights. The totality of the circumstances shows that Mr. Guerrero-Sanchez did not have the understanding to KNOWINGLY waive any rights afforded to him under the U.S. Constitution.

**Issue #2:** Whether the trial court erred by overruling Guerrero-Sanchez's motion to suppress his statements which were made without benefit of *Miranda* warnings.

. . . In his present case there is a question as to when the petitioner was actually in custody. More so, *Miranda* warnings was not given until the petitioner was transported to the local DEA office.

**Issue #3:** Whether the trial court erred by overruling Guerrero-Sanchez's motion to suppress the contraband found during the search of his hotel room.

**Ground Two:** The trial court erred when it sentenced Guerrero-Sanchez to eleven years in prison on Count 1.

**Supporting Facts:** The trial court sentenced the petitioner to the maximum term of incarceration that is clearly outside the precedent set forth in federal precedents. Mr. Guerrero-Sanchez was led to believe there was an agreed sentence of three years. The trial court violated his Sixth Amendment right to a jury trial as to the finding of "Fentanyl" to be the worst form of the offense Aggravated Possession of Drugs.

**Ground Three:** Due process was violated when Petitioner was not given notice of the filing deadline of ORC § 2953.21(A)(2) by either trial or appellate counsel.

**Supporting Facts:** It has been held that the petitioner could raise an independent due process claim in a post-conviction when he is not provided the filing deadline notice by counsel's [sic] for this prejudiced the petitioner as to his right to foile [sic] for such collateral relief.

**Ground Four:** Trial counsel was prejudicially ineffective to advise against accepting a three year sentence plea offer in exchange for a guilty plea under the false advise [sic] of success on a motion to suppress that later was denied.

**Supporting Facts:** The Sixth Amendment guarantees the petitioner the right to have counsel present at all 'critical' stages of the criminal proceedings. This includes at the entry of guilty pleas and in the plea bargaining process. The advice of trial counsel to the petitioner to decline the three year sentence, for he/trial counsel will succeed at the suppression hearing constitutes ineffective assistance of counsel.

(Petition , ECF No. 3, PageID 84-96.) Issue Three of Ground One has been withdrawn as barred by *Stone v. Powell,* 428 U.S. 465 (1976)(Supplement, ECF No. 20, PageID 139).

# Analysis

**Ground One: Issue No. 1: Conviction Based on Involuntary Statements to Police**

In this Issue 1 of Ground One, Guerrero-Sanchez argues his statements to the police were involuntary. He presented this claim to the Second District Court of Appeals as part of his First Assignment of Error on direct appeal and that court decided the issue as follows:

> *Guerrero-Sanchez's Statements Were Voluntary*
>
> **[\*P26]** Guerrero-Sanchez first claims the statements he made to Agent Swallen and Detective Walters should have been suppressed because his statements were involuntary due to his inability to understand the English language.
>
> **[\*P27]** "Whether a statement was made voluntarily and whether an individual knowingly, voluntarily, and intelligently waived his or her *Miranda* rights are distinct issues." (Citations omitted.) *State v. Lovato*, 2d Dist. Montgomery No. 25683, 2014-Ohio-2311, ¶ 30. "Regardless of whether *Miranda* warnings were required and given, a defendant's statement may have been given involuntarily and thus be subject to exclusion." *Id.*, citing *State v. Kelly*, 2d Dist. Greene No. 2004-CA-20, 2005-Ohio-305, ¶ 11.
>
> **[\*P28]** "In determining whether a pretrial statement is involuntary, a court 'should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 13, quoting *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *overruled*

*on other grounds, Edwards v. Ohio*, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978).

**[\*P29]** "'[C]oercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment.'" *State v. Banks-Harvey*, 2d Dist. Montgomery No. 26786, 2016-Ohio-4715, ¶ 8, quoting *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). "'Evidence of use by the interrogators of an inherently coercive tactic (e.g., physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality of the circumstances analysis.'" *Id.*, quoting *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988). "A confession is voluntary 'absent evidence that [the defendant's] will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct.'" *Id.*, quoting *State v. Jackson*, 2d Dist. Greene No. 02CA0001, 2002-Ohio-4680, ¶ 20. (Other citation omitted.)

**[\*P30]** In this case, the trial court indicated that its decision to overrule the motion to suppress Guerrero-Sanchez's statements was based on the credibility of the witnesses. Accordingly, it is clear from the record that the trial court found the officers' testimony more credible than Guerrero-Sanchez's and relied on the officers' testimony when issuing its decision.

**[\*P31]** The testimony of Agent Swallen, Detective Walters, and Officer Lockhart indicate [sic] that Guerrero-Sanchez understands and speaks the English language. Specifically, Swallen and Walters testified that Guerrero-Sanchez communicated with them in English throughout the encounter without a problem and that Guerrero-Sanchez did not mention a language barrier until after Swallen asked him about the drugs in the suitcase. Guerrero-Sanchez's ability to speak and understand English is buttressed by the testimony of Officer Lockhart, who testified that Guerrero-Sanchez had no difficulty understanding and speaking English with him while incarcerated at the Montgomery County Jail, and that Guerrero-Sanchez acted as an English translator for his Spanish-speaking cellmate. We also note that Guerrero-Sanchez testified that he has been living in the United States for 16 years, almost half his life, and that he has been able to obtain employment and travel across the country without any difficulty. Accordingly, there is competent and credible evidence in the record supporting the finding that Guerrero-Sanchez understood what the offers were saying during the encounter at the hotel room.

> **[\*P32]** We further note that the officers' testimony also indicates that the encounter in the hotel room was not coercive in nature. There is no indication that Guerrero-Sanchez was subject to any threats or mistreatment. Moreover, the officers testified that the whole encounter lasted no more than 20 minutes without any weapons drawn, and that Guerrero-Sanchez was not handcuffed until he was transported to the DEA office.
>
> **[\*P33]** When considering the officers' testimony, the totality of the circumstances do [sic] not indicate that Guerrero-Sanchez's statements were rendered involuntary as the result of a language barrier or any coercive police conduct. Rather, the totality of the circumstances indicate that Guerrero-Sanchez understands and speaks the English language at a level sufficient to have understood Swallen's questions and that he voluntarily complied with the officers at the hotel room and answered their questions.
>
> **[\*P34]** For the foregoing reasons, Guerrero-Sanchez's argument that his statements were involuntary and should have been suppressed is overruled.

*Guerrero-Sanchez*, 2017-Ohio-8185.

The Warden defends on this claim on the merits, relying on the Second District's decision just quoted (Return of Writ, ECF No. 26, PageID 500-03). Guerrero-Sanchez responds that the actions of the officers amounted to an arrest without probable cause (Reply, ECF No. 27, PageID 528-29).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100(2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Guerrero-Sanchez does not argue this claim in terms of § 2254(d). The Magistrate Judge, however, concludes the state court's decision is entitled to deference under that statute. The appropriate standard asks whether the totality of the circumstances was coercive. There was no testimony of threats or physical violence or deprivations of food or water or sleep. The officers testified the encounter only lasted twenty minutes and Petitioner only began to raise the language barrier issue when the drugs and money were discovered and, of course, at that point there was probable cause for arrest. During his testimony at the suppression hearing, Guerrero-Sanchez claimed he neither spoke nor understood English, but he made no claims of physical coercion and did not contradict their testimony about the length of the encounter. (Transcript, State Court Record, ECF No. 24-1, PageID 423.) Petitioner's ability to understand English was testified to by both the arresting officers whose testimony was bolstered later by proof Guerrero-Sanchez routinely used English in the Montgomery County Jail. Thus, it cannot be said that the trial judge's findings of fact about the totality of the circumstances were an unreasonable determination in light of the evidence presented.

Great deference is due to state court credibility determinations. *Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011), citing *Felkner v. Jackson*, 562 U.S. 594 (2011). "For a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." *Otte v. Houk*, 654 F.3d 594 (6th Cir. 2011), *quoting Larry v. Branker*, 552 F.3d 356, 370 (4th Cir. 2009). In weighing the credibility of witnesses, trial judges who hear live witnesses are in the best position to gauge credibility. *Christopher v. United States*, 831 F.3d 737, 739 (6th Cir. 2016). While appellate judges review transcripts for a living, trial judges assess the credibility of live witnesses for a living and this "ring-side perspective" must be accounted for on appeal. *Id.,* quoting *United States v. Poynter*, 495 F.3d 349, 351-52 (6th Cir. 2007). In addition to failing to

show the state courts' factual determination was unreasonable, Petitioner has also failed to show it was an unreasonable application of clearly established Supreme Court precedent, particularly *Colorado v. Connelly*, 479 U.S. 157, 167 (1986), which is cited in paragraph twenty-nine of the Second District's opinion, *supra*.

The Second District's determination that Guerrero-Sanchez's statements were voluntary is entitled to deference. Ground One, Issue 1, should therefore be dismissed on the merits.

**Ground One: Issue Two: Violation of the *Miranda* Rule**

In his Second Issue, Petitioner asserts his statements should have been suppressed because he was entitled to receive the *Miranda* warnings before the statements at issue and they were not administered until afterwards. Guerrero-Sanchez raised this as part of his First Assignment of Error on direct appeal and the Second District decided it as follows:

> *Guerrero-Sanchez's Statements Are Not Suppressible Under Miranda*
>
> **[*P35]** Guerrero-Sanchez also contends that his statements to Agent Swallen and Detective Walters should have been suppressed because the officers failed to administer *Miranda* warnings.
>
> **[*P36]** "*Miranda [v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)]* requires police to give a suspect certain prescribed warnings before custodial interrogation commences and provides that if the warnings are not given, any statements elicited from the suspect through police interrogation in that circumstance must be suppressed." *State v. Petitjean*, 140 Ohio App.3d 517, 523, 748 N.E.2d 133 (2d Dist.2000). Police are not required to administer *Miranda* warnings to every person they question, even if the person being questioned is a suspect. *State v. Biros*, 78 Ohio St.3d 426, 440, 1997 Ohio 204, 678 N.E.2d 891 (1997), citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). Rather, *Miranda* warnings are required only for custodial interrogations. *Id.*, citing *Mathiason* at 494. (Other citation omitted.)

**[\*P37]** "An individual is in custody when there has been a formal arrest or a restraint of freedom of movement such that a reasonable man would believe that he is under arrest." *State v. Wenzler*, 2d Dist. Greene No. 2003-CA-16, 2004-Ohio-1811, ¶ 15, citing *Biros* at 440. "The subjective views of the interviewing officer and the suspect are immaterial to the determination of whether a custodial interrogation was conducted." (Citations omitted.) *In re L.G.*, 2017-Ohio-2781, 82 N.E.3d 52, ¶ 13 (2d Dist.). "The inquiry whether a person is subject to custodial interrogation is an objective question, focusing on how a reasonable person in the suspect's position would have understood the situation." (Citations omitted.) *Id.* "General, on-the-scene questioning of persons concerning events that have happened does not ordinarily fall within the ambit of custodial interrogation, because the compelling atmosphere inherent in the process of in-custody interrogation is not present." *State v. Barnett*, 2d Dist. Montgomery No. 14019, 1994 Ohio App. LEXIS 4767, 1994 WL 567551, \*4 (Aug. 31, 1994), citing *Miranda* at 477-478.

**[\*P38]** As previously noted, the trial court relied on the officers' testimony when overruling Guerrero-Sanchez's motion to suppress his statements. In applying the officers' testimony to the relevant law, we find that Guerrero-Sanchez's statements were not elicited during a custodial interrogation, as a reasonable person in Guerrero-Sanchez's position would not have believed that he was under arrest at the time the statements were made.

**[\*P39]** According to the officers' testimony, Guerrero-Sanchez permitted the officers inside the hotel room after Agent Swallen knocked on the door, identified himself, and asked to speak with him. After Guerrero-Sanchez answered the door, he put on a pair of jeans, sat on the couch, and proceeded to communicate with the officers voluntarily while under no physical constraints or threats of force. We note that after Swallen saw the glass pipe and methamphetamine on the nightstand, he proceeded to ask for Guerrero-Sanchez's permission to search the hotel room as opposed to arresting him or physically constraining him in anyway. As a further matter, neither Swallen nor Walters had their weapon drawn or showing during the encounter. Most importantly, the officers indicated that Guerrero-Sanchez was not placed in handcuffs until after the drugs were discovered in the suitcase. Accordingly, the officers' testimony indicates that Guerrero-Sanchez was not in custody until after the fentanyl was found. As a result, the statements elicited from Guerrero-Sanchez prior to those drugs being found were not obtained in violation of *Miranda*.

**[*P40]** The officers' testimony also indicates that once Guerrero-Sanchez was in custody he was not asked any further questions about the drugs found at the hotel room. Rather, Detective Walters testified that the only discussion he had with Guerrero-Sanchez after he was in custody concerned the benefits of cooperating with the authorities. We find that said discussion does not qualify as an interrogation requiring *Miranda* warnings because it was not designed or reasonably likely to elicit an incriminating response from Guerrero-Sanchez, but rather was a casual conversation. *See State v. Tucker*, 81 Ohio St.3d 431, 436-438, 1998 Ohio 438, 692 N.E.2d 171 (1998).

**[*P41]** Since Guerrero-Sanchez was not in custody when he discussed the drugs with the officers, his statements are not suppressible under *Miranda*. Accordingly, Guerrero-Sanchez's argument that his statements should be suppressed as a result of not being *Mirandized* is overruled.

*Guerrero-Sanchez*, 2017-Ohio-8185.

Respondent also defends this issue on the merits (Return of Writ, ECF No. 26, PageID 504-06). Petitioner responds briefly:

> Here, the circumstances compelled the giving of *Miranda* warnings. Petitioner Guerrero was not free to leave. He was being questioned by officers speaking in English, while he was a Spanish speaker. He was forcibly shoved to a bed, and police immediately began searching his room. Under such circumstances, *Miranda* warnings should have been provided.

(Reply, ECF No. 27, PageID 530.)

The relevant law is summarized as follows:

> The *Miranda* Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444. A suspect is "in custody" for purposes of receiving *Miranda* protection if there has been a "formal arrest or restraint on freedom of movement." *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v.*

10

> *California,* 511 U.S. 318, 323 (1994) (per curiam). *Miranda* warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *California v. Beheler,* 463 U.S. 1121, 1125 (1983) (per curiam) (quoting *Mathiason,* 429 U.S. at 495). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442 (1984).

*Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir. 2003). The only statements at issue in the suppression hearing were those made by Guerrero-Sanchez before the drugs were found in the suitcase. At that point he was placed formally under arrest and handcuffed and thus clearly was in custody. But no interrogation took place after that point and no statements from that point forward were sought to be placed in evidence.

The Second District's decision is neither an objectively unreasonable application of *Miranda* and its progeny nor an unreasonable determination of the facts from the evidence presented. Ground One, Issue Two, should therefore also be dismissed with prejudice.

**Ground Two: Sentence Imposed in Violation of the Right to Trial by Jury**

In his Second Ground for Relief, Petitioner asserts his Sixth Amendment right to trial by jury was violated when the trial court sentenced him to eleven years' imprisonment on the fentanyl count, determining that to be the "worst form of the offense Aggravated Possession of Drugs."

Respondent defends by asserting Ground Two does not state a claim for relief cognizable under the Eighth Amendment because the sentence is acknowledged to be within the maximum authorized by Ohio law for the offense of conviction (Return, ECF No. 26, PageID 507). Respondent also asserts this claim is procedurally defaulted by Guerrero-Sanchez's failure to fairly

present it to the state courts as a federal constitutional claim. *Id.*

Petitioner replies that he is not making an Eighth Amendment cruel and unusual punishment claim, but a Sixth Amendment claim under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny (Reply, ECF No. 27, PageID 531). He also claims that the Second District understood it was adjudicating an *Apprendi* claim, thereby overcoming the lack of fair presentation defense. *Id.* at PageID 531-32.

Guerrero-Sanchez raised his sentencing claim as his Second Assignment of Error on direct appeal and the Second District rejected it, largely deciding the state law issue of whether it was correct to find that possessing fentanyl in bulk was the worst form of possession. That question is not before this Court because we do not sit in habeas to consider claims of state law error. Petitioner's claim that the federal issue was also being decided is supported, he claims, by the Second District's citation to *State v. Marcum,* 146 Ohio St. 3d 516 (2016), which is said to cite in turn *Apprendi* and *Blakely v. Washington*, 542 U.S. 296 (2004). But *Marcum* only cites *Apprendi* and *Blakely* in the context of explaining the decision in *State v. Foster,* 109 Ohio St. 3d (2006), in which the Supreme Court of Ohio "excised portions of the [Ohio] sentencing statutes" in obedience to *Apprendi* and *Blakely*. 146 Ohio St. 3d at ¶ 13. In other words, *Marcum* is not a state court decision "employing [federal] constitutional analysis in like factual situations" so as to show a federal question was being decided. See *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987); *accord*, *Whiting v. Birt*, 395 F.3d 602 (6th Cir. 2005); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000). Its citation to *Marcum* does not show the Second District believed it had been presented with and was deciding an *Apprendi* issue. The Sixth Amendment issue arising from *Apprendi* was not fairly presented to the Second District or decided by it. Ground Two is therefore procedurally defaulted for lack of fair presentation.

Even if the Sixth Amendment claim were not procedurally defaulted, it would be without merit. The trial judge did not have to make any finding of fact beyond what Guerrero-Sanchez admitted with his no contest plea to impose the eleven-year sentence. That is, the amount of fentanyl needed to authorize the eleven-year sentence was admitted by Petitioner in the no contest plea proceedings. Thus, there was no necessary "element" requiring jury consideration or proof beyond a reasonable doubt.

In sum, Ground Two should be dismissed as procedurally defaulted or, in the alternative, on the merits.

**Ground Three: Denial of Due Process by Failure to Notify of the Filing Deadline for Post-Conviction Petition**

In his Third Ground for Relief, Guerrero-Sanchez claims he was denied due process of law when he was not notified of the filing deadline for a petition for post-conviction relief under Ohio Revised Code § 2953.21.

Respondent argues that, as pleaded, Ground Three does not state a claim cognizable in habeas corpus and, in any event, the claim is procedurally defaulted by Guerrero-Sanchez's failure to appeal from denial of his first post-conviction petition (Return, ECF No. 26, PageID 509-12).

Petitioner admits in his Reply that he filed his post-conviction petition late, but claims that procedural default is excused by the ineffective assistance of trial counsel and ineffective assistance of appellate counsel in not advising him of the deadline (Reply, ECF No. 27, PageID 526-28). He notes that Ground Three is not raised as a freestanding claim of ineffective assistance of counsel, but rather to excuse his procedural default in filing late. *Id.* at PageID 528.

The Sixth Circuit has held that notifying a client of the filing of the trial transcript and of

the deadline for filing under Ohio Revised Code § 2953.21 is a duty of appellate counsel; failure to fulfill that duty is cause excusing failure to timely file the post-conviction petition. *Gunner v. Welch*, 749 F.3d 511, 518 (6th Cir. 2014). Conversely, the Sixth Circuit has not held that either trial counsel or the trial or appellate court has a duty to provide notice of the post-conviction filing deadline.

Because the fact of appellate counsel's failure to notify is a fact outside the record on appeal, it would have to be established in a post-conviction proceeding and Guerrero-Sanchez attached to his post-conviction petition an affidavit indicating he had not been thus advised by appellate counsel. However, he further procedurally defaulted this claim by not appealing from the adverse decision of the trial court, an action he could not take now because delayed appeal is not available from an Ohio Revised Code § 2953.21 decision.

Thus, any ineffective assistance of appellate counsel in not notifying Guerrero-Sanchez of the filing deadline under Ohio Revised Code § 2953.21 cannot be used to excuse his untimely filing of that petition because ineffective assistance of counsel, even when used to excuse a procedural default and not as a freestanding claim, must itself be properly brought and exhausted in state court proceedings. *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000).

**Ground Four: Ineffective Assistance of Trial Counsel in Plea Negotiations**

In his Fourth Ground for Relief, Guerrero-Sanchez claims he received ineffective assistance of trial counsel when his trial attorney advised him to reject a three-year agreed sentence on the projection that he could and would win the motion to suppress.

The governing standard for ineffective assistance of trial counsel was adopted by the

Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel=s challenged conduct, and to evaluate the conduct from counsel=s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d

313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

There is a constitutional right to the effective assistance of counsel in the plea bargain process which includes the duty of an attorney to communicate an offered plea bargain. *Missouri v. Frye*, 566 U.S. 134, 145 (2012); *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012).

The *Strickland* standard applies in evaluating ineffective assistance claims in cases which resulted in a negotiated plea. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to satisfy the "prejudice" prong of *Strickland* in a negotiated plea case, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no contest and would have insisted on going to trial. *Hill*, 474 U.S. at 58. Moreover, he must show that there would have been a reasonable chance he would have been acquitted had he gone to trial. *Id.* at 59; but see *Lee v. United States*, 137 S.Ct. 1958, 1960 (2017)(where the critical issue from a defendant's perspective is deportation, great likelihood of conviction and deportation after trial does not make decision to go to trial irrational.)

"The test is objective, not subjective; and thus, 'to obtain relief . . . a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances'" *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012), quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). The rationality of such a rejection is typically based on multiple factors, including the strength of the evidence against a defendant, the lack of viable defenses, and the benefits of the plea bargain. See *Pilla*, 668 F.3d at 373; *Haddad v. United States*, 486 F. App'x 517, 522 (6th Cir. 2012). There is an established deference that is afforded trial counsel in the area of plea bargaining. *Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).

In this case there appears to have been no likelihood of winning at trial. That is, there does

16

not appear to have been a question of the drug identity and it was found in a suitcase in a hotel room of which Guerrero-Sanchez was the sole occupant in possession. Although he initially claimed it belonged to others, they were not present or identified and there was testimony at the motion to suppress hearing that the suitcase was unlocked with a key Petitioner gave the officers. Thus Guerrero-Sanchez's chances of an acquittal appear to have depended on getting the evidence suppressed.

Moreover, the terms of the offered plea bargain are clear: an agreed three-year sentence, but only if accepted before the suppression hearing began. Guerrero-Sanchez rejected that offer on the record in open court after it was made clear to him that, after a conviction, he could be sentenced anywhere from three to eleven years. (Transcript, ECF No. 24-1, PageID 367-68).

While the record includes clear evidence of what the offered plea bargain was, that Petitioner had discussed it with counsel, and that Guerrero-Sanchez rejected it, it does not include evidence of any advice defense counsel Lachman may have given Petitioner. Because the allegedly ineffective advice is not in the record on direct appeal, it would have to have been raised in a petition for post-conviction relief. Guerrero-Sanchez did so in the Affidavit attached to his petition for post-conviction relief (State Court Record, ECF No. 24, PageID 335). The allegation is completely conclusory: it does not reveal any discussion of the context of the advice, *e.g*, what factors Lachman may have been relying on in projecting success on the motion to suppress. To the extent that Guerrero-Sanchez may have persuaded Lachman that he could not understand English and believed he could persuade Judge Singer of that, Guerrero-Sanchez knew that he had spent nearly half his life in this country successfully acting in a predominantly English speaking economy and that there were witnesses from the Montgomery County Jail, independent of what happened at the scene of the arrest, who could testify to his acting as an English interpreter for his

17

cellmate. Lachman also may not have known how strong the testimony of the arresting officers would be; we are not told whether their statements had been produced in discovery or not.

Given the officers' testimony at the hearing, there was not a strong case to win on the motion to suppress. Had Lachman known the facts as they developed in the hearing, it would have been poor advice to suggest rejecting the offered plea agreement. However, none of those facts are offered in Guerrero-Sanchez's Affidavit which is completely conclusory. In evaluating that claim on the merits, this Court is limited to the factual record created in the state courts. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). On that record, Guerrero-Sanchez has not demonstrated that Lachman's advice to reject the plea agreement was ineffective assistance of trial counsel.

Moreover, this Court may not reach the merits of this ineffective assistance of trial counsel claim because it also is procedurally defaulted: when Guerrero-Sanchez lost on his petition for post-conviction relief, he failed to appeal to the Second District. Had he done so, he would have had a colorable claim to overcome the untimeliness, based on *Gunner*, *supra*, federal constitutional precedent the Second District would have been bound to acknowledge. Furthermore, he would have had a very arguable assignment of error challenging the trial court's *res judicata* decision because his claim of ineffective assistance of trial counsel plainly depended on facts outside the record, taking it outside the *res judicata* doctrine of *State v. Perry*, 10 Ohio St. 2d 175 (1967).

Petitioner argues the Court can reach his ineffective assistance of trial counsel claim on the merits because the "Court should forgive the exhaustion requirement where, as here, 'pursuit [of a state remedy] is clearly futile.'" (Supplement, ECF No. 20, PageID 139.) The Court agrees that attempting a delayed appeal of the denial of the post-conviction petition would indeed be futile because Ohio law does not permit such an appeal. (See letter from Assistant Ohio Public Defender Craig Jacquith, ECF No. 20, PageID 157-58, citing *State v. Nichols*, 11 Ohio St. 3d 40 (1984).)

18

But the fact that a delayed appeal now would be futile does not imply that a timely appeal would have been futile. For the reasons given above, Guerrero-Sanchez would have had arguable assignments of error in a timely direct appeal, to which he had a clear right. If the State were to argue lack of exhaustion from failure to pursue a delayed appeal now, the Court would readily excuse that failure on the basis of futility. But excusing exhaustion is different from excusing procedural default. "A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

> First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*. Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.

Lovins, *supra*.

Guerrero-Sanchez has offered no excusing cause and prejudice for his failure to timely appeal from denial of post-conviction relief. He was not in a situation such as that described in *Gunner* where an attorney was under a duty to advise him of the deadline for appealing but was not entitled under the Sixth Amendment to the assistance of appointed counsel in pursuing such an appeal. Indeed, Guerrero-Sanchez's circumstances are similar to those of the petitioner in *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004), where the Sixth Circuit held that lack of counsel on appeal, lack of a trial transcript, unfamiliarity with the English language, and short time for legal research in prison do not establish cause to excuse this default. *Id.* at 497, citing *Murray v. Carrier,* 477 U.S. 478, 494-95 (1986).

In sum, the state court record, to which this Court is limited, does not show attorney Lachman provided ineffective assistance of trial counsel in advising Petitioner to reject the plea

agreement, assuming that he did in fact give that advice.  Moreover, this Fourth Ground for Relief is procedurally defaulted by Petitioner's unexcused failure to appeal to the Second District from denial of his post-conviction petition.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

October 16, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).